**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROSEMARY THERESA VOLAGE,<br><br>              Plaintiff,<br><br>             v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | Civil Action No.: 11-cv-4413 (ES)<br><br>**OPINION** |

**SALAS, District Judge**

Before the Court is an appeal filed by Rosemary Theresa Volage ("Claimant" or "Ms. Volage") seeking review of the Administrative Law Judge's ("ALJ") decision denying Ms. Volage's application for disability insurance benefits and Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court **AFFIRMS** the ALJ's judgment.

**I.      Background and Procedural History**

Ms. Volage is a 57-year old woman claiming to suffer from the following conditions: fibromyalgia, rheumatoid arthritis, depression, anxiety, herniated disks, plantar fasciitis, neuromuscular damage in right leg, upper back, shoulder, and arm, pinched nerve, carpal tunnel syndrome, type II diabetes, chronic bronchitis, anemia, hypertension, allergies, and obesity. (R.

at 15-16, 155).[1]  On July 30, 2007, Claimant applied for disability benefits and SSI alleging disability as of January 1, 2003.  (R. at 13).  The claims were denied initially and upon reconsideration on February 12, 2008, and May 12, 2008, respectively.  (R. at 69, 74, 82, 85).

On May 14, 2008, Claimant requested a hearing before an ALJ.  (R. at 88).  ALJ Charles S. Evans held the hearing on October 20, 2009.  (R. at 13).  On November 10, 2009, the ALJ issued a decision finding that Ms. Volage is not disabled under the Social Security Act and therefore ineligible for benefits.  (R. at 24.)  Claimant requested that the Appeals Council review the ALJ decision but the Council denied the request.  (R. at 1-9).  Claimant filed a complaint with this Court on July 29, 2011.  (*See* Docket Entry No. 1).  The Court received the administrative record on October 21, 2011 and the matter is now ripe for adjudication.  (*See* Docket Entry No. 7).

## II.    Legal Standards

### A.  Standards for Awarding Benefits

To qualify for Social Security benefits, the claimant must first establish that she is "disabled."  42 U.S.C. § 1381.  "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period."  *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotation marks omitted).  A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

---

[1] The Court uses the initial "R." to refer to the Administrative Record.

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4).

**B.  Burden of Proof**

The five-step sequential evaluation process involves a shifting burden of proof.  *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she

suffers from a severe impairment, then the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  If she is able to make this showing then she is presumed disabled.  If she cannot show that she meets or exceeds a listed impairment, then at step four she must show that her residual functional capacity does not permit her to return to her previous work.  20 C.F.R. § 404.1520(e).  If the claimant meets this burden, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work.  20 C.F.R. § 404.1520(g).  If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires more than a mere scintilla, "it need not rise to the level of a preponderance."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

In reviewing an ALJ's decision, the court must look to the ALJ's "expression of the evidence s/he considered which supports the result," as well as the reasoning behind the rejection of certain evidence to determine if substantial evidence supports the findings.  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  An ALJ's reasoning for weighing or rejecting evidence is

particularly important when there is "conflicting probative evidence in the record." (*Id.* at 706). The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

### III.    The ALJ's Finding and Final Determination

At step one, the ALJ found that Ms. Volage "ha[d] not engaged in substantial gainful activity since January 1, 2003, the alleged onset date." (R. at 15).

At step two, the ALJ determined that the medical evidence supported a finding that Claimant had three severe impairments: fibromyalgia, depression/anxiety, and obesity. (*Id.*).

At step three, the ALJ found that Ms. Volage did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 16).

The ALJ made a credibility finding to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms," and found Claimant's subjective complaints of pain less than credible. (R. at 18). The ALJ determined that the Claimant retained the residual functional capacity to perform a modified range of light work. (*Id.*).

At step four, the ALJ found that Ms. Volage was capable of performing her "past relevant work as a bookkeeper" since that work did not require any activities precluded by her residual functional capacity. (R. at 22). Alternatively, the ALJ, through vocational expert testimony, established that Ms. Volage would also be able to work as a night auditor or cashier. (R. at 23).

Consequently, the ALJ concluded that Ms. Volage was not disabled within the meaning of the Social Security Act.  (*Id.*).

IV.    **Analysis: Review of the ALJ's Determination**

On appeal, Ms. Volage argues that substantial evidence exists in the administrative record to support a finding of disability.   Therefore, Ms. Volage asks this Court to reverse the Commissioner's final administrative decision.   Alternatively, Ms. Volage asks the Court to remand the decision to the Commissioner for reconsideration in light of alleged deficiencies in the ALJ's decision.  (*See* Docket Entry No. 10, Plaintiff's Memorandum of Law ("Pl.'s Br.")). Specifically, Ms. Volage contends that the ALJ erred at step three by not properly evaluating whether she met a listed impairment. (*Id.* at 27-32). She also alleges the following errors at step four: 1) the ALJ did not give proper credence to Ms. Volage's subjective complaints, (*id.* at 21-27); 2) the ALJ improperly found that Ms. Volage could perform her past relevant work, (*id.* at 32-37); and 3) the hypothetical supplied to the vocational expert did not accurately portray Ms. Volage's impairments.  (*Id.*).

Below, the Court addresses each alleged deficiency as it relates to the sequential five-step disability analysis.

**A.  Step Three: Consideration of Impairments**

The Court first determines whether the ALJ's analysis at step three was proper. Specifically, the Court must determine whether the ALJ considered the combined effect of Ms. Volage's fibromyalgia, depression/anxiety, and obesity to determine whether the overall effect was medically equivalent in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify . . . .  For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990).

The Third Circuit requires an ALJ to "set forth the reasons for his decision."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (2000) (citing *Cotter v. Harris*, 642 F.2d 700, 704-705 (3d Cir. 1981)).  Specifically, the "ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).  However, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Ms. Volage argues that the ALJ failed to properly evaluate her mental impairments under Listings §§ 12.04 (Affective disorders) and 12.06 (Anxiety-related disorders).  Specifically, Claimant asserts that, "the record supports that the plaintiff [is] disabled per se by meeting Listing 12.04 and its criteria A and B," as well as the requirements of A and B under Listing 12.06.  (Pl.'s Br. 30, 31).  Claimant argues that the ALJ improperly relied on medical expert Dr. Duckler's opinion when he found that Ms. Volage did not meet a listed impairment.  (*Id.* at 30). The Commissioner maintains that substantial evidence supports the ALJ's finding that Ms. Volage did not meet or equal the listings above.  (Docket Entry No. 11, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def.'s Br.") 6).

The Court finds the Commissioner's argument has merit. Claimant cites to records illustrating symptomology satisfying the paragraph A criteria while arguing that those same records prove marked limitations. (Docket Entry No. 12, Plaintiff's Reply Letter ("Pl.'s Ltr.") 1) This evidence does not persuade the Court. The ALJ found that while Claimant met the symptomatic criteria of "paragraph A," she did not have marked impairments under the "paragraph B" criteria of 12.04 and 12.06: [2]

> To satisfy the 'paragraph B' criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(R. at 17). The ALJ found that Claimant had mild restrictions in daily living activities, moderate difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace. He found no episodes of decompensation. (*Id.*). The ALJ therefore determined that Claimant did not have marked impairments meeting the listing criteria.

Ms. Volage's restrictions on daily living activities, based on her hearing testimony, reports from interviewing physicians, and her SSA application, indicate that while her husband performed most of the housework, she was capable of maintaining her personal hygiene, preparing simple meals, and performing light housework. (R. at 48-51, 163-173, 757-766). Based on this evidence, the ALJ found that Claimant's ability to perform daily living activities was not markedly limited. (R. at 17). With regard to social functioning, Ms. Volage testified that although she was afraid of crowds and sometimes she had difficulty motivating herself to leave the house, she was able to take public transportation and attend school part-time. (R. at 45-

---

[2] Listings 12.04(B) and 12.06(B) are the same. For this reason, the Court examines the ALJ's marked impairment analysis as representative of the combined effects of depression and anxiety on Claimant.

47).  While Ms. Volage also reported that she is not a "social butterfly," she "got along with everybody" and treatment notes indicate that she conversed easily with medical practitioners. (R. at 45-47, 52, 167, 266, 268, 272, 273, 278, 304).  The ALJ found, based on this testimony, that Claimant was moderately limited in social functioning.  (R. at 17).

The ALJ based his analysis of concentration, persistence, or pace on Ms. Volage's testimony that, despite some difficulty with motivation, she watched television, attended 8 hours of school a week, and completed 8 hours of homework a week.  (R. at 17, 19, 33-36). Correspondence from Claimant's community college instructor stated that Ms. Volage was a "top student" who took on leadership roles and never complained about the workload or intensity of her schoolwork.  (R. at 204).  The ALJ credited psychological testing indicating that Ms. Volage did well on attention screening measures and had normal cognition; her screening for memory was weak but her scores raised concern that Claimant was not exercising full effort on the exam.  (R. at 762-765).  The ALJ further found that the record did not show any episodes of decompensation.  (R. at 17).

The ALJ noted that the record did not establish any "paragraph C" criteria.  (R. at 17, 796, 811).  Claimant makes no argument that she specifically meets paragraph C criteria.

This Court finds that there is substantial evidence to support the ALJ's conclusion that Ms. Volage's restrictions do not rise to the level of marked impairments for Listings 12.04 and 12.06.  The ALJ based his analysis on substantial evidence from Ms. Volage's testimony regarding her functioning and impairments and the observations by her various medical practitioners, rather than solely on Dr. Ducker's testimony.

**B.  Step Four: Credibility, Consideration of the Record, and Past Relevant Work**

Next, the Court determines if the ALJ properly evaluated Ms. Volage's residual functional

capacity ("RFC"). RFC is defined as the "most that [claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). When making an RFC determination, the ALJ must consider all relevant evidence before him, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41; *see also* 20 C.F.R. § 404.1545(a). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121.

> The ALJ found that Ms. Volage had the following residual functional capacity:
>
> Claimant can walk approximately 4 blocks and can stand for ½ hour at a time and sit for an hour at a time and can occasionally lift not more that 20 pounds and not repetitively, but with some frequency, can lift ten pounds; she has a mild impairment in the manipulative use of her dominant (right) hand; pushing/pulling is limited to such things as opening or closing a drawer; she can drive; her eye sight is functional as corrected by glasses; her hearing is functional; she is average in short-term memory and concentration; she can climb 2-6 stairs with the assistance of a handrail; she has a mild intolerance for dealing with the public; her stamina is no more than 90% of normal person of her age in good health.

(R. at 18). Ms. Volage argues that the ALJ's residual functional capacity assessment is flawed. Specifically, Claimant contends that the ALJ's assessment 1) "failed to give proper credence" to her subjective complaints, 2) failed to consider the entire record, 3) improperly found that she was able to perform her past relevant work, and 4) inaccurately portrayed her limitations to the vocational expert. (Pl.'s Br. 21, 23, 32-36). The Commissioner maintains that the ALJ properly weighed all evidence and found that Ms. Volage's complaints were not entirely credible. (Def.'s Br. 14). As a result, the Commissioner contends, the ALJ's vocational hypothetical included only credibly established limitations. (*Id.* at 18).

### i. Credibility and Subjective Complaints

The Third Circuit established the following four-part test to determine the credibility of a claimant's subjective complaints.  That test requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (citations and quotations omitted).

Symptoms alone are not enough. No combination of symptoms can be the basis for a finding of disability unless there is medical evidence demonstrating a medically determinable physical or mental impairment.  *See* 20 C.F.R. §§ 404.1529, 416.929(a); SSR 96-7p.  The ALJ must evaluate the intensity, persistence, and functionally limiting effects of the pain or symptoms once a claimant has demonstrated, by medical signs or findings, the existence of an underlying condition that could produce said symptoms.  20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; *see Hartranft v. Apfel*, 181 F.3d at 362  ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.").  An ALJ is required to consider the claimant's subjective complaints, but may reject these complaints when they are inconsistent with the objective medical evidence, claimant's own testimony, or other evidence in the record.  *Hartranft*, 181 F.3d at 362.  The ALJ must explain his reasons for rejecting or assigning specific weight to relevant evidence, or when conflicting probative evidence exists in the record, so that the district court can perform its reviewing function.  *Cotter*, 642 F.2d at 706-707.

Ms. Volage argues that the ALJ's credibility determination was flawed because he did not "give proper credence" to her subjective complaints and did not consider the record as a

whole.  (Pl.'s Br. 21-22).  The Commissioner asserts that the ALJ properly considered the entire record, evaluated Ms. Volage's complaints, and found that her subjective complaints were not entirely credible.

This Court finds that the ALJ properly evaluated Ms. Volage's subjective complaints on the basis of the entire record and found them not wholly credible.  The substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings.  *See Smith v. Califano*, 637 F.2d 968, 969 (3d Cir. 1981).  An ALJ's credibility determination is unsound only if it is based on scant evidence or speculation.  *Id.*  The ALJ's decision is based on substantial evidence and does not suggest speculation.  Therefore, the Court will defer to his negative credibility finding.

The ALJ found that Ms. Volage had underlying medically determinable physical and mental impairments, namely fibromyalgia, depression/anxiety, and obesity, which could be expected to produce Ms. Volage's pain and symptoms. (R. at 15).  "Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record."  (R. at 18).  Fibromyalgia and depression/anxiety, while medically determinable, are difficult to substantiate by objective medical evidence. *See Hirschfeld v. Apfel*, 159 F. Supp. 2d 802, 811-12 (E.D. Pa. 2001). Accordingly, Ms. Volage's credibility was paramount in evaluating the limiting effects of her pain and symptoms.

First, the ALJ did not completely disregard Ms. Volage's subjective complaints. Instead, he found that "the evidence in the record reflects [that] claimant's functional limitations are not as significant and limiting as she alleges."  (R. at 19).  Ms. Volage alleged constant pain in her

neck, back, right arm, elbow, hand, wrist, legs, hips, feet and heels, persistent headaches, depression, anxiety, and fear of crowds. (R. at 18, 38-43, 46-47, 171-173).  She also claimed she could only be on her feet for ten minutes and could only sit for 30 minutes.  (R. at 18, 48-49).

The ALJ's credibility analysis was based on four areas: Claimant's daily activities and testimony, objective medical evidence, evidence of malingering, and Claimant's criminal history. (R. at 18-22).

The ALJ noted that Claimant's daily activities and testimony suggested inconsistencies in her true capabilities.   Ms. Volage is able to maintain her personal hygiene, use public transportation, attend school part-time, perform light housework, use a computer, and manage money.  (R. at 18).   The ALJ also noted some inconsistencies in Ms. Volage's reported ambulatory function.  Claimant testified that she needed a wheelchair and could not walk without the assistance of a walker or cane; she cited numbness in her lower legs and feet, along with heel pain attributed to plantar fasciitis.  (R. at 41, 48).  Despite these alleged limitations, records indicated that Ms. Volage, when living apart from her husband, visited him daily in a house without wheelchair access.  (R. at 806, 811).  Records from Ms. Volage's incarceration indicated that in 2007, she did not need assistance when getting into her bunk, walking to the shower, or showering while standing.  (R. at 392, 394-399).

The ALJ also found that objective medical evidence does not lend support to the extreme intensity of Ms. Volage's pain. X-rays from 2007 and 2008 of the right and left knee, right ankle, right hand, right and left wrist were normal.  (R. at 748-755).  X-rays of the cervical spine from 2007 and 2008 were normal with the exception of lumbar scoliosis.  (*Id.*).  Radiology reports from 2004 and 2005 were also unremarkable.  (R. at 392, 394-399, 431).  Claimant points to EMGs and MRIs from 1995 as objective medical evidence of conditions causing pain.  (Pl.'s Br.

at 24).  However, this evidence is improperly relied upon and irrelevant.  *See* discussion *infra* Part IV.B.ii.

The ALJ's credibility analysis also relied on examining physicians' reports of possible malingering.  During Ms. Volage's incarceration, she was observed wheeling herself in her wheelchair and manipulating objects without difficulty, grimacing, or other overt signs of pain or discomfort; a unit officer reported that despite her wheelchair, she ambulated easily from her chair to her bunk or the shower.  (R. at 343-344). Yet when she was lightly touched during an examination the next day, she grimaced, pulled back, and cited pain.  (*Id.*).  The record indicated that while such pain is not totally inconsistent with fibromyalgia, Claimant's actions suggested dramatic behavior.  (*Id.*).  In two examinations by different doctors in 2004 and 2007, the examiners noted inconsistent straight leg raises and exaggerated pain behavior.  (R. at 486, 744). The 2007 examination noted "'significant evidence of poor effort and inconsistencies' (R. at 744); claimant alleged she could not stand on her toes or heels, but 'getting on the table she stood exclusively on her toes.'"  (R. at 20) (citing R. at 744).  Multiple records also show physicians questioning Claimant's reliance on a wheelchair.  (R. at 428, 742-747, 805) (noting inconsistent reliance on cane, walker, and wheelchair and noting no evidence that a wheelchair was necessary). In a 2007 psychological examination, the psychologist noted that Ms. Volage's scores on the Structured Inventory of Malingered Symptomology (SIMS) raised doubt about the extent of her symptoms.  (R. at 757-766).

> If the total SIMS score exceeds the recommended cutoff score, it indicates that the individual has endured a high frequency of symptoms that are highly atypical in patients with genuine psychiatric or cognitive disorders, and raises suspicion of malingering.  In this case, Ms. Volage's total SIMS score of 26 exceeded the cutoff of 14, raising concerns about the accuracy of her self-reported symptoms. . . . On three of the [five sub-scales] Ms. Volage's scored exceeded the recommended cutoff score. Her elevated scale above the cutoff on Neurologic Impairment indicated that she was endorsing illogical or highly atypical

neurologic symptoms. Her elevated score on Amnestic Disorders indicated that she was endorsing symptoms of memory impairment that are inconsistent with patterns of impairment seen in brain dysfunction or brain injury. She also indicated a scale score above the cutoff for Affective Disorders. This scale focuses on symptoms that can be present in depressed or anxious individuals, but that occurs on an infrequent basis. It is not the symptom itself that is indicative of malingering on the scale, but the high rate of endorsement of such symptoms. . . . [H]er scores . . . raise[] concerns about the credibility of her overall symptoms reporting, particularly as it relates . . . to memory and affective functioning.

(R. at 764).

The ALJ's credibility analysis also addressed Ms. Volage's incarceration and the possibility of secondary gain.

Claimant admits that she stopped working because her employment was terminated because she embezzled funds (15F, see hearing record). Records indicate she was working for a non-profit women's shelter for victims of domestic violence when she was terminated for embezzlement in excess of $171,000 in December 2002 (8F/4, 9F/6, 11F/13). Claimant testified that she was charged and convicted and served 39 months out of a 48 month sentence in prison. Records indicate she pled guilty to several counts of Theft I (9F/8). She testified that her alleged onset of disability date of January 2003 is approximately the date of her last paycheck after her employment was terminated in December 2002 (see hearing record). Records indicate claimant [w]as able to perpetuate her crime over two years and took steps to keep it secret (9F/9, 11F/13). When contacted by a CDIU investigator, the district attorney who prosecuted claimant indicated that at the time of sentencing in September 2004 claimant did not use an assistive device or complain of pain (9F/6[,] 11F/13, 13F). Records indicate that claimant used over $75,000 of the embezzled funds for street level purchase of prescription drugs including Percodan, Oxycodone, and Vicodin (9F/7). Records indicate that claimant has restitution obligations of over $170,000 (9F/6). While claimant's criminal record is not determinative, it does not bolster her credibility.

(R. at 19-20).  Claimant argues that her estimated monthly disability payment of $1,100.00 to $1,400.00 is "[h]ardly, [sic] a windfall in today's economy" and does not indicate secondary gain since "[t]he record will show that plaintiff's impairments were evident and causing plaintiff pain and limitations as far back as May 1995 when she was injured in an accident." (Pl.'s Br. 22-23). This Court does not find those arguments persuasive. As the ALJ noted, "more than one record in claimant's file finds her reporting chronic pain and numbness since a motor vehicle accident

in 1975, but this did not prevent her from working gainfully for years." (R. at 20; *see* R. at 806, 320).

Based on the above, the ALJ found Claimant's alleged functional limitations to be less than credible based on the evidence above.[3]  Therefore, this Court defers to the ALJ's credibility determination.

### ii.  Consideration of the Entire Record

Claimant argues that the ALJ did not consider the record in its entirety. Specifically, she points to exhibit 21F, a report from Dr. Nazar Haidri, and exhibit 22F, a medical source opinion from Dr. Joseph Black, her treating doctor.  Ms. Volage argues that 1) the ALJ ignored objective medical evidence supporting her claim in exhibit 21F, and 2) the ALJ improperly disregarded her treating physician's opinion.  (Pl.'s Br. 23-24, 35-36).

The objective medical evidence Claimant cites is unpersuasive for three reasons. First, exhibit 21F contains Dr. Haidri's discussion of Ms. Volage's pain treatment and a review of medical imagery, including MRIs, EMGs, X-rays, and CAT scans.  (R. at 862-69).  However, the images and treatment in question were performed after Ms. Volage's 1994 motor vehicle accident.  (*Id.*; R. at 320).  Second, this evidence does not pertain to the alleged disability period beginning in 2003.  Ms. Volage was gainfully employed for nine years after the 1994 accident, and more recent images do not support an inference that she still suffers from those injuries.  (*See* R. at 748-55, 392, 394-399, 431 (indicating normal x-rays)).  Third, the ALJ did not cite this evidence because it was not in the record at the time of the hearing.  (R. at 4, 29).  The report was submitted to the Appeals Council upon reconsideration, but was never in front of the ALJ.  (*Id.*).

---

[3] Claimant argues that the ALJ's "extensive detail" regarding her incarceration undermines his credibility analysis.  However, she cites no authority for the proposition that criminal convictions are not relevant to Social Security credibility determinations. The Third Circuit has not directly addressed this point, but the Second Circuit has upheld credibility determinations that also rest on other grounds, such as inconsistency between testimony and medical records.  *See Netter v. Astrue*, 272 F. App'x 54 (2d Cir. 2008).

Claimant's argument about exhibit 22F is similarly unpersuasive.  The exhibit is a form opinion by Dr. Black, not his treatment records.  (R. at 870).  Contrary to Claimant's argument, the ALJ did not disregard Dr. Black's opinion by not citing to this evidence.  This evidence was not in front of the ALJ at the time of the hearing and was similarly submitted to the Appeals Council after the ALJ rendered his decision.  (R at 4).  Dr. Black's treatment records, however, were in the record at the time of the hearing.  (R. at 29).  The ALJ noted that Dr. Black's opinion was "given little weight, because it is inconsistent with the record as a whole including other medical opinions and claimant's activities of daily living." [4]  (R. at 21).

Evidence not before the ALJ cannot be used to argue that the decision was not supported by substantial evidence.  *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991).  This Court is empowered to remand a case if new and material evidence comes to light after the decision and there is good cause for not submitting the evidence previously.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).  The new evidence must not simply be cumulative of what is in the record.  *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985).  Evidence is material when it is probative and relevant to the time period, and creates the reasonable possibility that it would have changed the outcome.  *Id.*  Claimant has made only conclusory statements about the need

---

[4] The Third Circuit requires the ALJ to adopt the judgment of treating physicians in the absence of contradictory evidence.  *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). However, the Third Circuit upheld an ALJ's rejection of a treating physician's opinion when, as in the instant case, "[t]he opinion offered by [Claimant's] treating physicians were conclusory and unsupported by the medical evidence, and failed to explain why ailments that had plagued [Claimant] for decades did not incapacitate [Claimant] until [the alleged onset date]."  *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  Treating physicians' opinions were not controlling when other physicians evaluated those same medical findings and "concluded that those findings did not reveal any condition that would preclude gainful employment."  *Id.*

for remand based on this evidence, and made no arguments that the evidence satisfies the standards above.[5]  (Pl.'s Ltr. 5).  This Court finds that remand is not justified.

### iii.   Past Relevant Work and Vocational Hypothetical

Ms. Volage argues that the ALJ improperly found that she could perform her past relevant work as a bookkeeper since her nonexertional impairments would preclude her from even a sedentary job.  (Pl.'s Br. 32).  Claimant contends that the ALJ's hypothetical questions to the vocational expert ("VE") did not fully account for the severity of her impairments, leading to improper findings at steps four and five.  (*Id.* at 35).  The Commissioner responds that the ALJ's hypothetical properly included all of Ms. Volage's credible limitations.  (Def.'s Br. 18).

An ALJ is not required to submit all alleged impairments to the vocational expert. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Rather, a hypothetical must "accurately portray . . . all of a claimant's credibly established limitations."  *Id.*  (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)) (internal quotation marks omitted). The Third Circuit has established the following guidelines to determine if a limitation has been credibly established:

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. *Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason.* Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in

---

[5] A review of the record shows that Dr. Black's form opinion was requested on October 20, 2009 but not received until November 6, 2009, six days after the ALJ hearing.  (R. at 209).  This might satisfy the good cause requirement for new evidence.  However, the form is merely cumulative of Dr. Black's opinion, and the opinion that Claimant would miss days from work, which the ALJ and vocational expert considered at the time of the hearing.  *See Newhouse*, 753 F.2d at 287; (R. at 60-62).  Conversely, Dr. Naidri's opinion existed for years prior to the hearing, but was simply not submitted.  (R. at 862).

the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Id.* (citations and quotations omitted) (emphasis added).

Claimant argues that she "suffered from chronic pain syndrome, agoraphobia, panic attacks, difficulty concentrating and thinking and was taking a myriad of medications with resulting side effects". [6]  (Pl.'s Ltr. 5).   Here, the ALJ found that Ms. Volage's subjective complaints were contradicted by the record and did not credit those limitations to the degree Ms. Volage alleged.  (R. at 18).  Instead of finding that Ms. Volage could perform medium work, as the state examiners opined, the ALJ limited Ms. Volage's RFC to light work.  *See* discussion *supra* Parts IV.A, IV.B.ii.   Again, Ms. Volage's credibility was central to the ALJ's determination.  Since the ALJ did not fully credit the degree of pain alleged in Ms. Volage's complaints, he properly omitted those limitations when questioning the VE.  Accordingly, the ALJ did not err by not including every alleged limitation.

Claimant argues that the ALJ improperly disregarded nurse practitioner ("NP") Anna Anderson's opinion that Ms. Volage would miss two to three days of work from even a sedentary job due to her impairment.  (Pl.'s Br 35-36; Pl.'s Ltr. 2, 4-5).  Ms. Volage argues that the NP's opinion is dispositive of her inability to work because the VE's testimony noted that missing two to three days of work a month would rule out Claimant's past relevant work as a bookkeeper.  (R. at 61).  The ALJ afforded some weight to NP Anderson's opinion with regard to Ms. Volage's diagnosis.  (R. at 21).  However, the ALJ afforded NP Anderson's opinion about Ms. Volage's vocational capabilities very little weight since she was not an acceptable medical source under SSR 06-03p and Ms. Volage's daily activities reflected a higher level of

---

[6] Claimant's side effect argument is unavailing.  Ms. Volage testified at her hearing that the only side effect she experienced was constipation, which was treated with medication.  (R. at 42).

functioning.  (*Id.*).  This is not error, since the ALJ properly explained his reasoning with respect to this evidence.

Claimant goes on to argue that remand is required for the ALJ to consider Dr. Black's form opinion stating Ms. Volage would miss two to three days of work per month.  (Pl.'s Ltr. 5).  The Court declines to take that course of action.  Dr. Black's opinion is merely cumulative evidence for the argument that Ms. Volage would miss work, and the Court is not persuaded that this evidence creates the reasonable possibility that the Commissioner would have decided Ms. Volage's claim differently.  *See Newhouse*, 753 F.2d at 287; *Szuback v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).  Furthermore, the ALJ properly afforded Dr. Black's opinion, based on the medical records, little weight because it was inconsistent with other medical opinions and Ms. Volage's activities.  (R. at 21).  *See* discussion *supra* Part IV.B.ii, notes 4, 5.

Based on the above reasoning, the Court finds that the hypotheticals posed to the vocational expert properly considered all of Claimant's credible impairments.  Therefore, substantial evidence supports the ALJ's finding that Ms. Volage could perform her past relevant work, or alternatively work as a night auditor or cashier.

**V.    Conclusion**

For the foregoing reasons, the ALJ's judgment is AFFIRMED.


*s/ Esther Salas*
**Esther Salas, U.S.D.J.**